UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


UNITED STATES OF AMERICA,

                    Plaintiff,

        vs.                    CASE NO. 8:14-cr-462-T-33AEP
                               July 2, 2015
                               Tampa, Florida
                               2:30 - 3:33 p.m.

GIEZI MAGNO ZAMORA,
JHONNY ENRIQUE ARCENTALES MERO,

                    Defendants.
_____/










                TRANSCRIPT OF SENTENCING HEARING
                 (Magno Zamora - Document No. 150)
                (Arcentales Mero - Document No. 149)
       BEFORE THE HONORABLE VIRGINIA M. HERNANDEZ COVINGTON
                  UNITED STATES DISTRICT JUDGE













Proceedings reported and transcribed by
computer-aided stenography.

APPEARANCES:

For the Government:        JAMES ZOLL, ESQ.
                          Assistant U.S. Attorney
                          400 N. Tampa Street, Suite 3200
                          Tampa, Florida 33602
                          813/274-6000


For the Defendant,        CHARLES M. BRITT, III, ESQ.
Giezi Magno Zamora:       546 Twelfth Street West
                          Bradenton, Florida 34205
                          941/747-4440


For the Defendant,        JAMES JOHN ARMINGTON, ESQ.
Jhonny Enrique            3410 Ridge Blvd
Arcentales Mero:          Palm Harbor, FL 34684
                          727/580-4832


Interpreter:              Ricardo Arenas


Court Reporter:           Howard W. Jones, RPR, FCRR
                          801 N. Florida Avenue
                          Suite 15A
                          Tampa, Florida 33602
                          813/301-5024

* * * * * * * * * *

P R O C E E D I N G S

1     (Court called to order.)

2          THE COURT:  We're here for the sentencing in

3     United States vs. Giezi Magno Zamora and Jhonny Enrique

4     Arcentales Mero, Case 14-criminal-462-T-33AEP.

5          And the first thing we'll do is swear in the

6     interpreter, Mr. Arenas.

7          (Interpreter sworn by the Deputy Clerk.)

8          THE INTERPRETER:  I do.  For the record, Ricardo

9     Arenas, A-r-e-n-a-s.

10          Good afternoon, Your Honor.

11          THE COURT:  Thank you, Mr. Arenas.

12          Would counsel please state their appearances?

13          MR. ZOLL:  Good afternoon, Your Honor, James Zoll

14     on behalf of the United States standing in for Mr. Murray.

15          THE COURT:  Okay.  Thank you.  And let me just get

16     the name of the special agent.  Is that --

17          MR. DUNCAN:  Coleman, first name Coleman, last

18     name Duncan.

19          THE COURT:  Okay, Mr. Duncan.  And who are you

20     with?

21          MR. DUNCAN:  FBI.

22          THE COURT:  Okay.  Thank you.

23          MR. DUNCAN:  Thank you.

24          MR. ARMINGTON:  Good afternoon, Judge.  James

1    Armington here with Mr. Arcentales Mero.

2              THE COURT:  Okay.  Thank you.

3              MR. BRITT:  Good afternoon, Your Honor.  Charlie

4    Britt on behalf of Mr. Giezi Magno Zamora.

5              THE COURT:  Thank you.  And I will sentence both

6    defendants at the same time, so we'll go through this for

7    both defendants.

8              Do I pronounce Mr. Zamora's first name -- is it

9    Giezi?

10             DEFENDANT MAGNO ZAMORA:  Giezi.

11             THE COURT:  Giezi, okay.  Giezi Magno Zamora, on

12   April 15th, 2015, and Jhonny Enrique Arcentales Mero, on

13   March 30th, 2015, you entered a plea of guilty to Count One

14   of the indictment charging you with conspiracy to possess

15   with intent to distribute five kilograms or more of cocaine

16   while onboard a vessel subject to the jurisdiction of the

17   United States in violation of Title 46, United States Code,

18   Section 70503(a), 70506(a) and (b), and 21 U.S.C., Section

19   960(b)(1)(B)(ii).

20             Let's see.  Did Mr. Magno plead guilty of Count

21   Two?  Is one a little bit different than the other,

22   Mr. Zoll?  Can you double check?  I know it's not your case,

23   but I just want to make certain.

24             I'm sorry.  Mr. Britt?

25             MR. BRITT:  Mr. Magno Zamora is an open plea, Your

1  Honor.

2       THE COURT:  Okay.  So he pled to both charges

3  then?

4       MR. BRITT:  That is correct, Your Honor.

5       THE COURT:  Thank you.

6       We got the answer there, Mr. Zoll.  I know it's

7  not your case, I didn't mean to put you on the spot there.

8       So Mr. Magno also pled to Count Two of the

9  indictment charging you with possession to distribute five

10  kilograms or more of cocaine while aboard a vessel subject

11  to the jurisdiction of the United States in violation of

12  Title 46, United States Code, Section 70503(a), 70506(a),

13  18 U.S.C., Section 2, and 21 U.S.C., Section

14  960(b)(1)(B)(ii).

15       So just so we're clear, Mr. Magno was an open plea

16  to both Counts One and Two, Mr. Arcentales' plea was a plea

17  to just Count One, right?

18       MR. ARMINGTON:  That's correct, Judge.

19       THE COURT:  The Court has previously accepted your

20  guilty plea and has adjudged you guilty of those offenses.

21  We have now reached the stage in the proceedings where it is

22  my duty to address several questions to you and your

23  attorney and the counsel for the government.

24       All right.  Mr. Zoll, have you had the opportunity

25  to read both presentence reports?

1          MR. ZOLL:  I have, Your Honor.

2          THE COURT:  All right.  Do you have any objections

3    as to the factual accuracy of the report?

4          MR. ZOLL:  I have no objections, Your Honor.  I

5    was looking through them to determine what sentences were

6    received by co-defendants and when you look at the report

7    for Mr. Magno Zamora, on the second page it lists the

8    various sentences for co-defendants and my --

9          THE COURT:  Hold on a second.  Give me a second to

10   just find that.  Hold on.  I'm sorry.  You're on Mr. Zamora

11   now?

12         MR. ZOLL:  Mr. Zamora's.

13         THE COURT:  Okay.  Go ahead.

14         MR. ZOLL:  On page two, Defendant Fabian Estrada,

15   it says he received 135 months and I believe he received 120

16   months.  There are two individuals who received 135 months,

17   they were the two captains.  That was Hector Castillo and

18   the other Estrada, Ernesto Estrada.

19         So that's the only thing I noticed that was

20   incorrect, Your Honor.

21         THE COURT:  Okay.  Any objection to that being

22   changed?

23         MR. BRITT:  No, Your Honor.

24         MR. ARMINGTON:  No, ma'am.

25         THE COURT:  All right.  So who was the probation

1   officer for that?  Was it you, Ms. Shroyer?

2           No, Mr. Cordwell.  Any objection to that?  I could

3   just go ahead and make that notation on there.

4           PROBATION OFFICER:  That's fine, Your Honor.

5           THE COURT:  Okay.  So we will make that change.

6   Thank you very much for calling that to our attention,

7   Mr. Zoll.  Anything else that you can think of on that?

8           MR. ZOLL:  No, Your Honor.

9           THE COURT:  Okay.  Any objections to the probation

10  officer's application of the Guidelines?

11          MR. ZOLL:  No, Your Honor.

12          THE COURT:  Thank you.  I'm going to do -- let's

13  see, who am I going to do first?  Mr. Zamora will go first.

14          So, Mr. Britt, have you had the opportunity to

15  read and discuss the presentence report with Mr. Zamora?

16          MR. BRITT:  Yes, Your Honor, we have.

17          THE COURT:  Do you have any objections as to the

18  factual accuracy of the report?

19          MR. BRITT:  Yes, Your Honor.

20          THE COURT:  Okay.  I'm happy to hear you now,

21  Mr. Britt.

22          MR. BRITT:  Thank you, Your Honor.  And

23  specifically we would like to address paragraph ten of the

24  presentence investigation report.  I have spoken to the

25  United States Attorney's Office, as well as the case agent

1    in the case. Your Honor, I think that based upon the

2    information that we have and then what the facts has played

3    out is that the members of the boat, the Yeny Arg, who was

4    Mr. Magno Zamora, as well as Hector Castillo, left Guatemala

5    and met the other boat, the La Galosa, offshore. When they

6    left Guatemala, there were no drugs on the vessel as alleged

7    in the presentence investigation report.

8          At that point, Your Honor, when they met the

9    La Galosa offshore, that's when Carlos Jonathan Quijij

10    Franco and Jhonny Enrique Arcentales Mero went and got on

11    the Yeny Arg and came back -- or was coming back towards

12    Guatemala when they were intercepted by the Coast Guard.

13          So in relation to that, Your Honor -- and I know

14    it doesn't make a difference in a practical sense of the

15    Guidelines computation, but there was never any cocaine on

16    the Yeny Arg at any point during this conspiracy.

17          So that's the only factual issue that we have with

18    the PSI or PSIR, Your Honor.

19          THE COURT: Let me hear a response on that from

20    the government.

21          Mr. Zoll, any thoughts on that or do you want a

22    case agent to say anything with respect to that, testify or

23    anything?

24          MR. ZOLL: Well --

25          THE COURT: Yeah, go ahead. Let me hear.

1    MR. ZOLL:  Your Honor, based on the interviews we

2   conducted, there was no -- there were no drugs on the

3   Yeny Arg, it was transferred to the Galosa.  The Yeny Arg

4   went to pick up individuals that were involved in the

5   transport, but the dope was -- just happened to be

6   transferred to the Galosa, not the Yeny Arg.

7    THE COURT:  Okay.  So, Mr. Britt, is that enough

8   of an explanation or --

9    MR. BRITT:  Yes, Your Honor.  I mean, it's -- like

10   I said, the facts of it actually kind of dovetails into my

11   argument that I put in the sentencing memorandum about a

12   minor role --

13    THE COURT:  Right.

14    MR. BRITT:  -- that type of thing, so I wanted to

15   make that clear, because it appears from the PSI that the

16   drugs were transferred to the Yeny Arg and then there could

17   be argument made that Mr. Zamora helped unload those drugs

18   on -- which would make him more of a participant, that type

19   of thing.  So I think the government's stipulated facts and

20   then what I provided to the Court would be acceptable to the

21   defendant for inclusion in the PSI.

22    THE COURT:  Okay.  Would you like that, then,

23   added to the PSI, that -- a sentence, or do you want to tell

24   us exactly what you would like -- what the phraseology that

25   you would like is so there are no issues and then we'll see

1    if the government objects to that?

2            MR. BRITT:  Okay.  I think the phraseology or what

3    we're looking for -- and I apologize about not being the

4    most articulate person in the world, but that the captain of

5    the Yeny Arg, Hector Castillo, and Giezi Magno Zamora, as a

6    deckhand, left Guatemala -- left the Guatemalan coast and

7    approached the Yeny Arg offshore, where they took on

8    passengers Carlos Quijij Franco and Jhonny Enrique

9    Arcentales Mero.  They took those two passengers and then

10   were attempting to return to Guatemala when they were

11   intercepted by the United States Coast Guard, that at no

12   point were there any kilograms of cocaine either traveling

13   from Guatemala or to Guatemala aboard the Yeny Arg.

14           THE COURT:  The government object to that?

15           MR. ZOLL:  One moment, Your Honor.

16           THE COURT:  Sure.

17           MR. ZOLL:  That's fine, Your Honor, no objection

18   from the government as applied to Mr. Zamora.

19           THE COURT:  Okay.  All right.  Thank you.  We'll

20   go ahead and make that addition.

21           Anything else, Mr. Britt?  Any objection to the

22   calculation of the Guidelines?

23           MR. BRITT:  Well, we do have an objection to that

24   calculation as well.

25           THE COURT:  Let me hear that then.

1    MR. BRITT:  Thank you, Your Honor.  And as

2  articulated in our sentencing memorandum, Your Honor, we're

3  asking the Court and we believe that a minor role reduction

4  under 3B1.2(b) should apply to Mr. Zamora in this case.  And

5  I don't think the facts are disputed, is that Mr. Zamora was

6  merely a deckhand or an assistant on the Yeny Arg, again,

7  which like I said, kind of dovetails into our argument that

8  Mr. Magno Zamora had no possession of or control of, did not

9  receive a substantial portion of the profits, did not have

10  any direction at all amongst how the drugs were to be

11  loaded, unloaded, he didn't organize anything, he didn't

12  prepare anything, that his only role was a little more than

13  just a passenger on the Yeny Arg that picked up these

14  passengers and brought them back.

15        And again, you know, Mr. Zamora certainly has

16  admitted his knowledge and his responsibility for this

17  conspiracy, but that his role in this case is minor compared

18  to the ones who did load or guard or transport the actual

19  cocaine from whatever point it came to to whatever point it

20  was going to and that Mr. Zamora's only role was to pick up

21  passengers and to help bring them back to the coast of

22  Guatemala.

23        Your Honor, so we would make argument that -- and

24  especially in Application Note 3(a) on the applicability of

25  adjustment, is that the Court can consider Mr. Zamora here

1  in this case -- because he performed only a limited

2  function, the Court is not precluded from consideration for

3  him an adjustment for minor role based upon his actual

4  participation in the facts as alleged against him in

5  particular in this case.  So we would argue, Your Honor,

6  that in this case that Mr. Magno Zamora should have received

7  a minor role reduction based on 3B1.2(b).

8          THE COURT:  Let me hear a response from the

9  government.  Thank you, Mr. Britt.

10         MR. BRITT:  Thank you.  Shall I return to my seat,

11 Your Honor?

12         THE COURT:  Yes, sir, just so he can speak from

13 the podium.  It's a little bit easier for us to hear.

14         MR. ZOLL:  Your Honor, as we always do in these

15 boat cases, I do object to the defense seeking a minor role

16 in this case.  Under the *De Varon* factors, I don't think it

17 falls -- that this defendant's conduct falls into the minor

18 role category.

19             As you can see here, the complexity of this

20 operation of transporting these hundreds -- 440 kilograms of

21 cocaine requires coordination with multiple vessels,

22 multiple people, transferring of cocaine from one vessel to

23 another.

24             The complexity of this operation shows that all

25 participants have a significant role.  It takes a lot to get

1  this done.  And this particular defendant's role is that of

2  assisting those who are transporting the cocaine, getting

3  back to shore so that way they can return to their home

4  country and probably do this again.  Your Honor, I don't

5  think this meets the criteria of minor role.

6       That said, this defendant is being held

7  accountable for more cocaine than his co-defendants because

8  he did -- there is evidence to suggest that he has done this

9  on more than one occasion.  However, to have parity with

10 that of his co-defendants, we don't object to a two-level

11 variance and this defendant being sentenced to the 120

12 months that the non-captain co-defendants were sentenced to

13 in this case.

14      THE COURT:  All right.  Well, I'm not going to

15 give a minor role reduction.  That's my ruling on that,

16 Mr. Britt.  I think it takes all of these individuals to

17 make something happen of this nature, this magnitude, and

18 your client is not entitled to the reduction.  But you heard

19 what the prosecutor said, that he doesn't object to a

20 variance for 120 months.  So it sounds like there's another

21 way to get to what you're asking for.

22      MR. BRITT:  Right.  And yes, Your Honor, if the

23 Court would like for me to, I can kind of go through the

24 rest of our --

25      THE COURT:  You know, I'm going to hear -- I

1   normally do it in stages, so I'll get to the 3553 factors a

2   little bit later.  Why don't we just see if there are any

3   other objections to the application of the Guidelines.

4          MR. BRITT:  Other than that, Your Honor, no.  I

5   mean, we have the same kind of request or acquiescence to a

6   variance that we're looking for under 3553, as well as the

7   Guidelines note.

8          THE COURT:  All right.  Very good.  I'll get to

9   that in just a moment.  Thank you so much.

10          So the Court adopts the undisputed factual

11  statements and guideline applications contained in the

12  presentence report.

13          As to the controverted factual statements and

14  guideline applications, the Court adopts the position the

15  Probation Office has stated in the addendum.

16          Therefore, the Court determines that the advisory

17  guidelines are Total Offense Level 33, Criminal History

18  Category I, 135 months to 168 months imprisonment, five

19  years supervised release, restitution is not applicable,

20  $17,500 to a 20-million-dollar fine, and a 200-dollar

21  special assessment.

22          Okay.  That's for Mr. Magno.  Let me go to

23  Mr. Arcentales.

24          All right.  Let's see, Mr. Armington, have you had

25  the opportunity to read and discuss with Mr. Arcentales the

1 presence report?

2          MR. ARMINGTON:  Yes, Your Honor.

3          THE COURT:  Do you have any objections as to the

4 factual accuracy of the report?

5          MR. ARMINGTON:  Well, none other than what

6 Mr. Britt already alluded to and we would ask to incorporate

7 that language into our PSR also.

8          THE COURT:  Okay.  Any objection to that?

9          MR. ZOLL:  No, Your Honor.

10          THE COURT:  Okay.  We will go ahead and do

11 precisely that, Mr. Armington.  It will be part of the PSR.

12          Do you wish to make any objection -- or any other

13 objections to the factual accuracy?

14          MR. ARMINGTON:  Not to the factual accuracy, no,

15 Judge.

16          THE COURT:  All right.  How about to the probation

17 officer's application of the Guidelines?

18          MR. ARMINGTON:  Judge, I've also -- my client and

19 I, we've also entered an objection, a written objection, to

20 the base offense level and the adjustment for role in the

21 offense based on the argument that my client did have a

22 minor role here, he was a minor participant in this

23 behavior.

24          My client, this is the only trip he ever made.  I

25 guess beginner's bad luck, but he -- he was simply a

1  deckhand.  He had no knowledge, again, of where the drugs

2  came from, where they were going.  He also doesn't even have

3  much information about who the organizers were or anything

4  because of the fact that he's a simple deckhand.  He was

5  less culpable obviously than the captain, than the load

6  guard, and we're asking the Court, based on those facts, to

7  consider giving him a minor role in this case, which would

8  give him a base offense level of 33 -- yeah, base offense

9  level of 33, an adjusted offense level of 29, and a total

10  offense level of 26.  That would take -- the imprisonment

11  range would be 63 months to 78 months based on -- if the

12  Court were to accept that minor role adjustment.

13          THE COURT:  I don't think he's entitled to a minor

14  role adjustment, but I'll hear what the government has to

15  say in case I'm wrong.

16          MR. ZOLL:  Your Honor, we again do not believe

17  that this defendant is entitled to a minor role adjustment.

18  We see all of the mariners in this case as equally culpable

19  and the captains of the vessels as being held to a higher

20  standard and they received the enhancement of two levels and

21  we stand by the position that none of the mariners in this

22  case are entitled to the minor role reduction.

23          THE COURT:  Okay.  I don't think he's entitled to

24  it, Mr. Armington.  It takes all of them to make it happen,

25  as I said before, so he's not entitled to that.

1            Were there any other objections to the calculation

2     of the Guidelines or anything else?

3            MR. ARMINGTON:  No, ma'am.

4            THE COURT:  All right.  The Court adopts the

5     undisputed factual statements and guideline applications

6     contained in the presentence report.

7            As to the controverted factual statements and

8     guideline applications, the Court adopts the position of the

9     Probation Office as stated in the addendum.

10           Therefore, the Court determines that the advisory

11    Guidelines are Total Offense Level 31, Criminal History

12    Category I, 120 to 135 months imprisonment, five years

13    supervised release, restitution is not applicable.

14           Is it a 15,000-dollar fine or 17,500-dollar fine?

15           PROBATION OFFICER:  Your Honor, it is --

16           THE COURT:  15,000-dollar to 10-million-dollar

17    fine.

18           PROBATION OFFICER:  Yes, Your Honor.

19           THE COURT:  Thank you.  And then a hundred-dollar

20    special assessment.

21           All right.  So now let's go back to Mr. Zoll.

22           Mr. Zoll, do you know of any reason why this Court

23    should not now proceed with imposition of sentence?

24           MR. ZOLL:  No, Your Honor.

25           THE COURT:  All right.  Do you wish to make a

1 statement with respect to what an appropriate sentence for

2 these two gentlemen would be?  I think you said earlier for

3 Mr. Magno, who's right now at 135 to 168 months, you don't

4 object to a downward variance of 120 months?

5          MR. ZOLL:  That's correct, Your Honor.

6          THE COURT:  And that's to have parity in

7 sentencing with the co-defendants?

8          MR. ZOLL:  Correct, Your Honor.

9          THE COURT:  All right.  So your position is 120

10 months is appropriate for Mr. Magno.  Anything else you

11 would like to say with respect to that gentleman, to

12 Mr. Magno?

13          MR. ZOLL:  No, Your Honor, just 120 months

14 sentence is --

15          THE COURT:  Okay.  And how about for the other

16 gentleman, for Mr. Arcentales, what's your position what an

17 appropriate sentence for him would be?

18          MR. ZOLL:  A low end Guidelines, Your Honor, 120

19 months as well.

20          THE COURT:  120 months.  So 120 months for both?

21          MR. ZOLL:  Yes, Your Honor.

22          THE COURT:  All right.  Thank you very much.

23          I'll now turn to each defendant individually and I

24 will start with -- let's see.

25          I've got you right there, Mr. Armington.  I'll

1   start with you, Mr. Armington, who represents

2   Mr. Arcentales.  Do you know of any reason why this Court

3   should not now proceed with imposition of sentence?

4           MR. ARMINGTON:  Well, Judge, I would like to make

5   some --

6           THE COURT:  Absolutely.  This is your opportunity

7   to make a statement, present any information in mitigation

8   of a sentence, 3553 factors, anything else you would like me

9   to consider.

10          And, Mr. Arcentales, you have the right to address

11  the Court directly.  You don't have to, but I wanted to make

12  certain that you understand that you have that right.

13          Do you understand that, Mr. Arcentales?

14          DEFENDANT ARCENTALES MERO:  Yes.

15          THE COURT:  Okay.  Very good.

16          I'm happy to hear you now, Mr. Armington.

17          MR. ARMINGTON:  Judge, I would like to point out

18  that although my client -- there is no motion today for any

19  substantial assistance, my client was the first to get in

20  touch with the government to say he wanted to cooperate.  We

21  were appointed on a Thursday and I saw him on Sunday and

22  made contact with the prosecutor immediately.  He did speak

23  with them and they were happy with his cooperation, but at

24  this time it has not raised to the level of a motion.  So

25  we're hoping for that eventually.

1        So I understand the Court's hands are tied here

2    and I explained it to my client, but he wanted me still to

3    make some argument about the fact that he has grown up very

4    poor, that he's been a fisherman all his life.  He has no

5    prior record.  He does have a wife and two children.  One of

6    his children died when it was very young.  And basically he

7    was -- he got involved in this hoping to make some money to

8    help his family.

9        He also would like the Court to consider letting

10   him spend his time in prison in Miami, if the Court can make

11   that recommendation.  He wants to also take classes in both

12   English and Spanish.  He would like to be able to work to be

13   able to send money home and he wouldn't be opposed to maybe

14   studying mechanics or electricity.

15       Let me see if he wants to say something to you,

16   Your Honor.  You want him to sit there or come to the

17   podium?

18       THE COURT:  He can sit there.  That's okay.

19       DEFENDANT ARCENTALES MERO:  Thank you for giving

20   me the opportunity to address you, Your Honor.  I would like

21   to ask you and all those present here in this courtroom, I

22   would like to apologize to you for having committed the

23   crime which I committed.

24       But most of all, I would like to apologize to the

25   United States.  I had no intention of harming anybody.  I

1   have never before done anything like this, but people like

2   myself who live in dire poverty, because of my ignorance,

3   that was what led me to commit this crime.  And I truthfully

4   apologize.  When I was young I did not have the opportunity

5   to get an education.  I have always been a fisherman and

6   we've always been poor.

7           And I repeat again I would like to apologize and

8   say that I'm sorry.  Because of my mistakes my family has

9   suffered.  I thought initially that I was going to be able

10  to obtain some money to help them.  And my family is

11  suffering tremendously and my children and that's why I ask

12  you, for the love of God, that you think not only about the

13  crime that I committed, but you think as well about my

14  children.  I'm truthfully remorseful.  And for now I am in

15  your hands, along with my companion.

16          And as far as the time of punishment that I will

17  receive, I would ask that you think not only about me, but

18  about my family, which I would like to recover.  For the

19  love of God, I ask you to consider my sentence and again ask

20  that God bless you and continue giving you wisdom to do the

21  work that you are doing.

22          THE COURT:  Thank you very much.

23          As I said, I'll sentence both defendants at the

24  same time.  I'm now going to turn to -- just give me one

25  second here, to Mr. Magno.

1          All right.  Thank you, Mr. Britt.

2          MR. BRITT:  Yes, Your Honor.  Thank you very much.

3          Mr. Magno Zamora, Your Honor, and we would like to

4    incorporate the arguments that were laid out in the written

5    sentencing memorandum that we did file for the Court's

6    review yesterday.  And I wanted to make sure the Court was

7    able to receive the attachments that we did file.

8          THE COURT:  Let me see, because, you know, I had a

9    problem on another case not getting something.  So let me

10   make certain that I have everything that I need in this

11   case.

12         MR. BRITT:  I do have the originals and I also

13   have an extra set of copies that the Court could acquire.

14         THE COURT:  Just give me one quick second.

15         MR. BRITT:  Yes, Your Honor.

16         THE COURT:  I have, yes, what you filed, the

17   notice of objections and sentencing memorandum.  Yeah, you

18   filed it on the record.

19         MR. BRITT:  Right.  And we also filed an

20   attachment about -- I would say roughly about ten or 12

21   character letters or letters of support on behalf of

22   Mr. Magno Zamora from his friends and family and

23   acquaintances in his town in Port Iztapa in Guatemala.

24         THE COURT:  Hold on, let me make certain I have

25   everything here, Mr. Britt.

```
1              MR. BRITT:  Yes, Your Honor.

2              THE COURT:  I have this, I have the pleading that

3   was filed on the record.  That one I have.  The letters,

4   were those filed on the record?

5              MR. BRITT:  They were filed, Your Honor.  However,

6   if they're not there, I do have the originals for the Court

7   and I have another set of copies, but --

8              THE COURT:  Mr. Britt, I don't think that I

9   have -- let me go online and double check.  If it's on the

10  record, I should have it.

11             MR. BRITT:  Yes, Your Honor.

12             THE COURT:  So just bear with me for a second

13  there.

14             Okay.  The sentencing memorandum.  Let's see.

15  Yeah, I don't have the letters, but I can look them up

16  online, so I can pull them up here.  Just give me a moment

17  to look at them.

18             MR. BRITT:  Yes, Your Honor.

19             THE COURT:  I'm sorry, I didn't see those before,

20  but I'm glad you said something.

21             Let's see.  So we have -- okay.  We have his

22  identification number, that's the first document.  Again,

23  another document concerning his identification.  Another

24  identification number.

25             Okay.  Then we have a friend or an individual who
```

1  says that he's a hard worker, a good person with his

2  neighbors, and that this gentleman recommends him.  Okay.

3          The next one is that this gentleman has known him

4  many years, he's an honest, responsible person of principle.

5          Then we have somebody else who says he's known him

6  five years, he's a responsible, honest individual.

7          Another person says the same thing, honest,

8  responsible, good principles.  So I don't know what one word

9  means, I will have to ask Mr. Arenas.

10          Y con deseos de superacion?

11          THE INTERPRETER:  With the desire to improve

12  myself.

13          THE COURT:  Okay.  Thank you.  I knew what y con

14  deseos meant, but I didn't know what superacion meant.  All

15  right.  Thank you.

16          Let's see, the next one is honest, responsible,

17  good -- same thing, deseos de superacion, to get ahead,

18  wants to improve himself.

19          Another letter here from another friend saying the

20  same thing, he's a person of good principles, known him for

21  a long time.

22          Next letter says, you know, similar sentiments,

23  that he's known him to be a person who has conducted himself

24  well and responsible, good morals, honest, hard-working

25  person.

1          Another letter says he conducts himself in

2    appropriate fashion, honest, hard worker.

3          They're all similar, all very good comments.  And

4    that he's obviously a good, hard-working man who his

5    neighbors and friends and co-workers think very highly of.

6    So those are certainly, you now, good, important accolades

7    that he's accomplished throughout his life.

8          This next one is, during the time I've known him

9    I've always known him to be honest, hard-working, humble,

10   simple, which means not arrogant in that context.  He always

11   is willing to help out.

12         All right.  That's the last one.  So that's what

13   they all say, all good compliments about him as a person.

14         MR. BRITT:  Yes, Your Honor.  And to incorporate

15   that into when we start talking about his personal and his

16   family characteristics for the Court to consider under

17   *Booker* and the 3553, what is accurately reported in the PSI

18   of course, Your Honor, is that it shows that Mr. Zamora

19   dropped out of school at the age of 12 to begin full-time

20   employment to help support his parents and family, dropped

21   out in the fifth grade.  I think that speaks a lot for him

22   as a person, Your Honor, in a big picture and I think I drew

23   the comparison to most American children, that it would be

24   probably criminal for an American parent to expect their

25   12-year-old child to drop out of school and to help with the

1  family expenses by obtaining a full-time job.  So I think

2  that just speaks volumes about, you know, number one, the

3  type of poverty that he comes from, but also too the type of

4  person that he is to be able to take a full-time job at the

5  age of 12 and to contribute to the family income and the

6  family's wellbeing.

7        And that continues up even through to today, Your

8  Honor.  Of course, he is one of nine children.  His mother

9  is extremely ill and, of course, the Court knows and has

10 probably heard before about the state of affairs in

11 Guatemala, being a very poor country, and the healthcare

12 system that they have is probably not one of the best in the

13 world, in which, you know, in all rights and respects his

14 mother probably won't live through a lengthy incarcerative

15 sentence of the defendant.

16       But given that, Your Honor, not only does he

17 support his parents even up until today, he is, again, one

18 of nine children and he also has his own two-year-old son

19 and three stepchildren to which he also supports, one of

20 which, Your Honor, you know, you saw in the PSI does reside

21 here in the United States with --

22       THE COURT:  I did see that.  He's an older boy,

23 he's not a little boy.  I think he was in high school or

24 college, something --

25       MR. BRITT:  I think it was 17 was the oldest.  The

1   other two are still at home in Guatemala with their

2   biological mother and the -- not the two-year-old, but I

3   believe it's a ten-year-old stepdaughter truly adores

4   Mr. Zamora and actually has bonded very well with him, much

5   more than, I think it was, about a 14-year-old boy in the

6   middle, which is I think a natural thing.

7          So not only is he responsible for continuing to

8   care for his family, he also has a substantial family of his

9   own back in Guatemala that he is also caring for.

10          And I think it's very telling also too from the

11  report, Your Honor, that, you know, as a boat mechanic that

12  he makes about $262 a month.  I did the equivalency from the

13  money that he disclosed to PSI, what he makes that month,

14  and if you look at that and you look at what he made on one

15  trip, just one trip, that is a year's salary for him to make

16  one trip.  And, you know, admittedly, it is an illegal

17  purpose, but, you know, we're talking about a dire poverty

18  situation halfway around the world and has no comparisons to

19  the way we live here in the United States.

20          THE COURT:  I understand.  I've spent a lot of

21  time in Latin America --

22          MR. BRITT:  Yes, Your Honor.

23          THE COURT:  -- and I've been down there working

24  with judges and I have done a lot of teaching and a lot of

25  interaction.  Guatemala is one of the few countries I

1  haven't been to, but I have worked a lot in Mexico and other

2  Latin American countries, so I'm familiar with the poverty.

3  I know in Guatemala it's a desperate situation.  I totally

4  understand and get it and I've seen firsthand what they're

5  dealing with.  So I understand.

6         MR. BRITT:  Yes, Your Honor.  And I knew that you

7  would, I just -- you know, I have also a degree of -- I've

8  spent a lot of time in Central America as well and I do have

9  a degree of sympathy, although I do understand it is a

10  criminal purpose or a criminal crime to do this here in the

11  United States, but we're, you know, talking halfway around

12  the world where things aren't the same as they are here.

13         So given that, Your Honor, I'm asking the Court to

14  consider a variance for Mr. Zamora.  And, you know, the

15  first thing we're asking for, of course, is to consider a

16  variance down based upon, you know, his personal

17  characteristics, the actual facts that were alleged, that he

18  is really not much more than a passenger in a taxi cab

19  bringing these folks offshore onto shore in Guatemala.

20         THE COURT:  Mr. Britt, the government did go down

21  the two levels, though.  I mean, they did that -- I mean,

22  really to 120 months.  I don't know if it was two levels or

23  not, but they went to 120 months.

24         MR. BRITT:  It would be, Your Honor.  It would be

25  two levels.  And it would be a variance to -- you know,

1  under -- and I think I quote in here in the actual memo that

2  we were asking for that as well, a variance for parity

3  amongst the co-defendants --

4          THE COURT:  Right.

5          MR. BRITT:  -- under 3553(a)(6), is I think the

6  actual specific citation for that that we were asking for as

7  well, Your Honor.

8          So, you know, I don't try to take anything for

9  granted and I know the government certainly has agreed to it

10  and recommended it, but I think that all these things should

11  be taken into consideration when the Court fashions an

12  appropriate sentence for Mr. Zamora.  I think that his

13  personal situation, his conduct in the actual case, I think

14  his cooperation, he did indicate that he wished to cooperate

15  early on and plea early on in this case.  He did meet with

16  the government and, in fact, he disclosed to the government

17  some other trips that he had made that the government

18  previously hadn't known about and I think that, you know,

19  inflated his guideline sentence a little bit more than maybe

20  some of his other co-defendants were.  But be that as it

21  may, he was honest about it and he did, you know, confess to

22  some things that wasn't previously known to the government.

23          So given all that, Your Honor, we're asking the

24  Court to consider a variance in this case down to at least,

25  if the very minimum, the same as the other mariners that are

1  involved in this case, the other deckhands, not the

2  captains, of 120 months.  And I know he does qualify for

3  safety valve.  I am of the impression or belief that not

4  necessarily the minimum mandatory would even apply in this

5  situation.

6        So like I said, in this case, based upon the

7  situation, we're asking the Court to consider a variance

8  even below that, so --

9        THE COURT:  I can't do that.  I mean, I'm very

10 sympathetic to them, all of them.  I know they're raised in

11 very difficult situations.  But when you look at the amount

12 of drugs involved, you know, he's being held accountable for

13 440 kilos -- I'm sorry, 1,240 kilos.

14       MR. BRITT:  Yes, Your Honor.  I do understand

15 that.

16       THE COURT:  I mean, it's not a hand-to-hand of a

17 half a rock, you know.

18       MR. BRITT:  That's true.  That is very true.

19       THE COURT:  And those -- they go to jail for five

20 years, a lot of those people.

21       MR. BRITT:  I know that he -- that certainly has

22 happened in the past, yes, Your Honor.

23       THE COURT:  So as sympathetic as I am, and I don't

24 know if you've done very many of these hearings with me, I

25 see them -- I don't know how many I've done, probably 50 or

1  60 --

2          MR. BRITT:  I have.

3          THE COURT:  -- and I feel so bad for the fact that

4  they are just trying to do it to make some money for their

5  family.  And they're all so humble and contrite, just like

6  these two gentlemen are, and you just feel so bad for them.

7  So bad.  But when you look at the amount of drugs involved,

8  I feel worse for the people who are dying using drugs or

9  whose lives are ruined because they used drugs as bad as I

10 feel for your client.  That's really where my sympathy is.

11         MR. BRITT:  Yes, Your Honor.  Would the Court

12 accept sentencing recommendations at this point?

13         THE COURT:  If you would like to give it to me

14 now, I'm happy to do that, sure.

15         MR. BRITT:  Yes, Your Honor.  And these are laid

16 out more specific on page six of our memorandum.  Your

17 Honor, we're asking the Court for an initial designation, if

18 available, to Coleman or, in the alternative, Jesup;

19         We're asking that he be recommended he can

20 participate in Unicor, maybe take some vocational training

21 in business and mechanic work, as he already has a

22 foundation with that that he learned from his father;

23         We also are asking the Court designate that he be

24 able to obtain a GED and also be able to become fluent in

25 English;

1           We're also asking for a recommendation, as was

2   reflected in the PSIR, that he does have a degree of a

3   substance abuse issue where I think the indication was that

4   he would drink at a time somewhere between eight and ten

5   beers at a time since he was about the age of 16, which

6   while I know it's not a traditional cocaine- or marijuana-

7   type addiction, I think the statistics bear out that

8   probably more people and lives have been ruined by alcohol

9   than actual controlled substances.  So we would ask, Your

10  Honor, that he maybe be designated for that if eligible and

11  determined by the Bureau of Prisons.

12          And I think that's all of our requests, Your

13  Honor.

14          THE COURT:  What should I call it, alcohol

15  treatment?

16          MR. BRITT:  Well, you know, I'm not -- I can

17  honestly say that I don't know if the RDAP program, the -- I

18  think the program is designated as 18 U.S.C. 3621(3) and

19  then 28 C.F.R. 550.58, the residential substance abuse

20  sentence reduction program.  I think that's the one I'm

21  actually looking for, which is the 500-hour intensive one

22  that allows for the sentence reduction as well.

23          We are hopeful in anticipation down the road that

24  we would get a Rule 35 maybe and that might help in the big

25  picture if he's eligible for that.

1    And the alternative, if that program does not

2 address alcohol addiction issues or alcohol abuse issues,

3 that if they have something like that, then we're looking

4 for that type of designation as well.

5    THE COURT:  Okay.  I'd be happy to do that.  And

6 by the way, I had a hearing this morning where the

7 individuals' sentences were reduced by four levels each.

8 Now, they were at a higher level than these gentlemen are,

9 they were more organizer types -- or not -- they weren't

10 organizers, but they -- it was a historical case and these

11 gentleman were extradited from Columbia to the United

12 States, so it wasn't --

13    MR. BRITT:  Right.

14    THE COURT:  They weren't stopped on a boat.  So

15 they had more information to give, but they -- it was

16 reduced by four levels.  So, you know, your clients need to

17 know that that's certainly a potential.

18    You know, it's kind of sad in a way.  The higher

19 up you are, the more information you have.  You're more

20 culpable.  But you have more information, that the lower

21 level folks have less information to bargain with.  So I

22 know that that's a sad reality.

23    MR. BRITT:  It does seem backwards sometimes, but,

24 yes, Your Honor.

25    THE COURT:  But, you know, that's the way our

1    system works and the system relies on information --

2              MR. BRITT:  Right.

3              THE COURT:  -- being provided.  Really, the people

4    that we really want to see here are the highest level people

5    who are profiting and causing all of the harm.

6              MR. BRITT:  Yes, Your Honor.

7              THE COURT:  Anything that you would like to say,

8    Mr. Zamora?

9              DEFENDANT MAGNO ZAMORA:  Yes.

10             THE COURT:  Go ahead, Mr. Zamora.  I'm sorry, no,

11   it's not -- it's Magno.  I'm sorry, I know your last name is

12   Magno, not Zamora.  Go ahead.

13             THE DEFENDANT:  Thank you very much for the time

14   that you have consideration or clemency with me, because I

15   have a family, that it was a mistake and I have to pay for

16   it.  That's all.  Thank you very much.  May God bless you.

17             THE COURT:  All right.  Thank you.  Thank you very

18   much, Mr. Magno, I appreciate it.

19             All right.  The Court has asked the defendant --

20   each defendant why judgment should not now be pronounced and

21   after hearing the defendants' response, the Court has found

22   no cause to the contrary.  The parties have made statements

23   in their behalf or have waived the opportunity to do so and

24   the Court has reviewed the presentence report and the

25   advisory Guidelines.

1    Pursuant to Title 18, United States Code, Sections

2   3551 and 3553, it is the judgment of the Court that the

3   defendant, Jhonny Enrique Arcentales Mero and Giezi Magno

4   Zamora, are hereby committed to the custody of the Bureau of

5   Prisons to be imprisoned for a term of 120 months.

6    With respect to Mr. Magno, it is also, as I said,

7   120 months.  That's to each of Counts One and Two, the terms

8   of imprisonment to run concurrently.

9    Okay.  Upon release from imprisonment, you shall

10   each serve a five-year term of supervised release.  For

11   Mr. Magno, it's a five-year term of supervised release as to

12   each of Counts One and Two, the terms of supervised release

13   to run concurrently for both of you.

14    While on supervised release, you shall comply with

15   the standard conditions adopted by the Court in the Middle

16   District of Florida.

17    In addition, you shall comply with the following

18   special conditions:

19    If the defendant is deported, he shall not

20   re-enter the United States without the express permission of

21   the appropriate governmental authority;

22    The defendant, having been convicted of a

23   qualifying felony, shall cooperate in the collection of DNA

24   as directed by the probation officer;

25    The mandatory drug testing requirements of the

1    Violent Crime Control Act are waived.

2         Well, let's see, should it be waived or imposed?

3    Is there any reason to make it different?  I've got one for

4    one and one for the other.  So what should I do, because

5    they're both pretty similarly situated.  They're going to be

6    deported back to their home country, it's a nonissue really,

7    but --

8         PROBATION OFFICER:  I never recommend it just

9    because the likelihood of them being on supervision.

10        THE COURT:  I'm going to waive it, there's just no

11   point.

12       The mandatory drug testing requirements of the

13   Violent Crime Control Act are waived.

14       However, the Court orders the defendant to submit

15   to random drug testing not to exceed 104 tests per year.

16       Based on the financial status of the defendant,

17   the Court waives imposition of a fine.

18       There aren't any forfeitures here, are there,

19   Mr. Zoll?

20       MR. ZOLL:  No, Your Honor.

21       THE COURT:  I don't think the vessel is going to

22   be subject to -- I mean, I don't think the government wants

23   to forfeit it, let's put it that way.

24       MR. ZOLL:  I think it's at the bottom of the

25   ocean, Your Honor.

 1          THE COURT:  I was gonna say, I don't think it's

 2   floating.

 3          Based on the financial status of -- I already said

 4   that.  Never mind.

 5          It is further ordered, let's see, that Defendant

 6   Arcentales shall pay a special assessment of $100, which

 7   shall be due immediately.

 8          And Defendant Magno shall pay special assessments

 9   totaling $200, which shall be due immediately.

10          After considering the advisory Sentencing

11   Guidelines and all of the factors identified in Title 18,

12   United States Code, Sections 3553(a)(1) through (7), the

13   Court finds that the sentence imposed is sufficient, but not

14   greater than necessary, to comply with the statutory

15   purposes of sentencing.

16          Let's see, for Mr. Arcentales, there was the plea

17   agreement.  The Court has accepted the plea agreement

18   because it is satisfied that the agreement adequately

19   reflects the seriousness of the actual offense behavior and

20   that accepting the plea agreement will not undermine the

21   statutory purposes of sentencing.

22          Under the plea agreement the defendant has entered

23   a guilty plea to Count One in return for the dismissal of

24   Count Two.  In accordance with the plea agreement, it is

25   ordered that Count Two of the indictment be dismissed.

1          That's only as to Mr. Arcentales, as Mr. Magno

2    pled to an open plea.

3          All right.  Both gentlemen, I sentenced you within

4    the Guidelines, except for one of you.  As we just heard,

5    the government did not object to a downward variance, so we

6    would have consistency in sentencing.

7          As I said earlier, both of you are very typical of

8    the very humble and forthright individuals that I see who

9    are caught up in these messes.  You both seem very genuine

10   and very good people, very humble.

11         And particularly the gentleman -- let's see,

12   Mr. Britt's client, Mr. Magno, those were beautiful letters

13   that were submitted on your behalf and they were all

14   heartfelt.  And I can tell that you're a very good man, that

15   you're both good men.  It's just very sad that this has

16   occurred and it's sad that you're being taken away from your

17   families.  It's a no-win situation for anybody.

18         But we don't want drugs to come to the United

19   States.  It's that simple.  And that's why we have what seem

20   like harsh penalties, like a long time in prison.  Ten years

21   in prison for people is a very, very long time and I

22   recognize that.  I recognize it's a tough punishment, but we

23   just don't want drugs here and that's why the punishments

24   are tough.

25         I encourage you to cooperate with the United

1    States government.  If you cooperate with the government,

2    you'll be eligible hopefully for a Rule 35 that will result

3    in a reduction in your sentence.

4         I know that there's hesitation sometimes to

5    cooperate for fear of what's going to happen to me, what's

6    going to happen to my family, is it really worth doing that,

7    and those are very personal decisions that I don't feel like

8    I should say anything about.  That's your own decision to

9    make.  I know that sometimes people are nervous about those

10   things, so that's your own decision to make weighing in your

11   own situation and your own circumstances and what you choose

12   to do.

13        I can tell you the government takes very seriously

14   threats against family members and those cases are

15   prosecuted to the full extent of the law, but you have to do

16   what's best for you and your family.

17        So anyway, that's why I've sentenced you as I

18   have.

19        The Court having pronounced sentence, does counsel

20   for the defendant or government have any objections to the

21   sentence or to the manner in which the Court pronounced

22   sentence other than those previously stated for the record?

23        Mr. Zoll?

24        MR. ZOLL:  No, Your Honor.

25        THE COURT:  Thank you.

1          Mr. Armington?

2          MR. ARMINGTON:  Only previously objected.

3          THE COURT:  That's right.  And I'm gonna get to

4   the recommendations in just a moment.  I want to make

5   certain I cover everything that I have to cover.

6          Mr. Britt?

7          MR. BRITT:  None other than already articulated,

8   Your Honor.

9          THE COURT:  That's already been stated for the

10  record?  Okay.

11         Both defendants are remanded to the custody of the

12  United States Marshal to await designation by the Bureau of

13  Prisons.

14         And let me just tell them about the appellate

15  rights and then we'll go back and do the recommendations.

16         Let's see, for Mr. Arcentales, to the extent

17  permitted by your plea agreement, you have the right of

18  appeal from the judgment and sentence within 14 days.

19  Failure to appeal within the 14-day period shall be a waiver

20  of your right to appeal.

21         The government may file an appeal from the

22  sentence.

23         You are also advised that you are entitled to

24  assistance of counsel in taking an appeal and, if you are

25  unable to afford a lawyer, one will be provided for you.

1    If you are unable to afford the filing fee, the

2  Clerk of the Court will be directed to accept the notice of

3  appeal without such fee.

4    All right.  As for Mr. Magno, you have the right

5  of appeal from the judgment and sentence within 14 days from

6  this date.  Failure to appeal within the 14-day period shall

7  be a waiver of your right to appeal.

8    The government may file appeal from the sentence.

9    You are also advised that you are entitled to

10  assistance of counsel in taking an appeal and, if you are

11  unable to afford a lawyer, one will be provided for you.

12    If you are unable to afford the filing fee, the

13  Clerk of the Court will be directed to accept the notice of

14  appeal without such fee.

15    All right.  Let's talk about recommendations then.

16    Let's see.  For Mr. Arcentales, I recommend that

17  he be housed in Miami.

18    If Miami FCI is not available, do you have a

19  second choice, just in case?  I mean, we don't want them to

20  send him to North Dakota or South Dakota or someplace.

21    MR. BRITT:  He would like to stay at Coleman,

22  Judge.

23    THE COURT:  Okay.  Coleman I think is a good

24  second choice, just so at least the weather is more used

25  to -- what he's used to, I should say.  All right.  So

1    Miami's the first choice, Coleman is the second choice;

2              That he takes classes in English as a second

3    language.

4              And would this be in improving his reading and

5    writing skills in Spanish?

6              MR. BRITT:  That's correct, Your Honor.

7              THE COURT:  Okay.  And improving his reading and

8    writing skills in Spanish;

9              That he do work for Unicor so that he's able to

10   send money back to his family;

11             That he take classes in mechanics or electricity,

12   electrical work I should say, and anything else that the

13   Bureau of Prisons determines is appropriate or could help

14   him with his life.

15             Let's see.  For the other gentleman, from this --

16             MR. BRITT:  Thank you, Your Honor.

17             THE COURT:  Okay.  You're welcome.  If I left

18   something out, you let me know before we recess.

19             For Mr. Magno, I recommend that he be housed first

20   in Coleman, second in Jesup;

21             That he take -- that he be allowed to work Unicor

22   jobs so he's able to send money back to his family;

23             That he be allowed to take classes in business,

24   mechanics;

25             That he obtain his GED;

1    That he learn English as a second language; and,

2    That he be allowed to participate in the, let's

3 see, alcohol addiction program at the Bureau of Prisons or

4 something that can help him with any addiction issues that

5 he has.

6    Is there anything else you can think of that I can

7 say with respect to that, Mr. Britt?  Alcohol addiction?

8 You know, most of the addiction that I see here is drug

9 addiction, so I don't see that many alcohol addiction --

10    MR. BRITT:  Right.

11    THE COURT:  -- but I fully recognize that it's

12 just as serious as drug addiction.

13    MR. BRITT:  Just the language would be that if he

14 is otherwise eligible for the residential substance abuse

15 program, the 500-hour program, if he's eligible for that.

16    THE COURT:  If he's eligible for the residential

17 substance abuse, the 500-hour program, that he be allowed to

18 participate in it.

19    Is that it?

20    MR. BRITT:  Yes.

21    THE COURT:  So I'm going to recommend that he be

22 evaluated.  This is the intensive 500 -- okay.

23    MR. BRITT:  Yes, Your Honor.

24    THE COURT:  I recommend that he be evaluated to

25 participate in the intensive 500-hour drug/alcohol treatment

1  program.  How about that?  Substance abuse program, because

2  I think a substance is a substance whether it's drug or

3  alcohol.  All right?

4          MR. BRITT:  Yes.

5          THE COURT:  Hopefully, they'll consider him for

6  that.

7          Is there anything else that you can think of that

8  I can put on there?  Let me start with Probation.

9          Anything else -- I mean, you know their stories.

10 Anything else that you can think of that I can put on there

11 that will help them?

12          PROBATION OFFICER:  No, Your Honor.

13          THE COURT:  How about from the lawyers?

14 Mr. Armington, anything that you can think of that will help

15 him?

16          MR. ARMINGTON:  No, ma'am.

17          THE COURT:  Okay.  Mr. Britt, anything else?

18          MR. BRITT:  No, Your Honor.  Thank you.

19          THE COURT:  All right.  Anything else that we can

20 handle today or say today or add today?

21          Anything from the government?

22          MR. ZOLL:  No, Your Honor.

23          THE COURT:  Okay.  Anything from anybody else?

24          (No response.)

25          THE COURT:  All right.  Well, Mr. Magno and

1   Mr. Arcentales, I wish you the best of luck.  I know that

2   it's very difficult to go to prison for ten years, but

3   hopefully you'll be able to learn some skills, learn English

4   as a second language and, hopefully, that will help you when

5   you return.  And hopefully, there will be a Rule 35 down the

6   road that will result in a reduction in sentence and so

7   instead of looking at ten years, you'll be looking at less

8   time in prison.  All right?

9           All right.  Thank you and good luck to you.

10          And we're in recess.

11          (Proceedings concluded.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2          I, Howard W. Jones, certify that the foregoing is
a correct transcript from the record of proceedings
3     in the above-entitled matter.

4

5                              /s *Howard W. Jones*

6                              _____
                              Howard W. Jones, RPR, FCRR
                              Official Court Reporter
7                              United States District Court
                              Middle District of Florida
8                              Tampa Division

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25